**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JESSICA GARNER,<br><br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 2:22-cv-02709-TLP-tmp |

**ORDER GRANTING REQUEST FOR RELIEF
TO SET ASIDE CONVICTION**

Movant Jessica Garner ("Garner") moves to vacate, set aside, or correct her sentence under 28 U.S.C § 2255. (ECF No. 1.) The Government responded, arguing the Court should deny any relief here. (ECF No. 13.) For the reasons below, this Court **GRANTS** Movant's Motion to Set Aside her conviction.

**BACKGROUND**

On July 27, 2020, the United States Marshals Service deputies and the Shelby County Fugitive Apprehension Team (collectively "Agents") conducted a surveillance operation at a home located at 221 McLean Boulevard, Memphis, Tennessee. (ECF No. 25 at PageID 278.) The surveillance identified Sheldon Gibbs ("Gibbs") and Dorjan Churchman ("Churchman"). (*Id.*) Gibbs and Churchman are individuals who had active warrants for homicide in Mississippi. (*Id.*) The residence was the last known location of Gibbs and Churchman and was being leased as an Airbnb. (*Id.*) Law enforcement officers saw Gibbs at the residence earlier that day. (*Id.*)

Gibbs was with John Lotts ("Lotts"), a rapper from Memphis. (*Id.*) Lotts posted a video on Facebook suggesting they were planning a party at the house. (*Id.*)

As officers approached, the Agents smelled a strong odor of marijuana coming from the home. (*Id.* at PageID 279.) The officers saw Gibbs leaving the rear of the home. (*Id.*) When he saw the Agents, he tried to run, but the Agents caught him, believing Churchman was still in the home. (*Id.*) They knocked on the door, but the individuals inside refused to let them enter. (*Id.*) The Agents then contacted the homeowner, Eric Wong, who consented to the Agents' entry of the home. (*Id.*) When they entered, the Agents secured all persons in the home, including Jessica Garner. (*Id.*) After escorting everyone outside, they obtained a search warrant for the house. (*Id.*)

During the search, officers recovered several firearms in different rooms. (*Id.*) One firearm was a Century Arms, model Draco, 7.62x39 caliber pistol. (*Id.*) Officers also interviewed Garner. (*Id.*) She admitted that she had smoked marijuana every day since she was 15, and that she consumed promethazine with codeine monthly. (*United States v. Dickerson*, No. 2:20-cr-20236-TLP-6 (W.D. Tenn.), ECF No. 214 at PageID 786.) She also admitted that the Draco pistol the Agents recovered belonged to her. (*Id.*)

Garner stated that she purchased the firearm a couple of weeks earlier from a Mid-America Pawn on Park Avenue in Memphis, Tennessee. (*Id.*) She bought the weapon for use in "Redrum" video shoots. (*Id.*) Garner admitted she shot the weapon about three times on July 4, 2020. (*Id.*) Garner allowed acquaintances to hold the firearm in video shoots. (*Id.*) She added that she and Kenneth Carruthers were the only people who handled the firearm. (*Id.*) Law enforcement officers saw a magazine with ammunition on the backseat of Garner's vehicle. (*Id.*) The magazine was for another Draco firearm owned by Garner, located inside her home. (*Id.*)

On August 6, 2020, Agents went to Mid-American Pawn to review the Pawnshop's ATF form, and they confirmed that Garner bought the firearm from the pawnshop. (*Id.*) Garner also answered "no" to the question asking if she was an unlawful user of or addicted to any drugs. (*Id.*) The Government charged Garner with violating 18 U.S.C. § 922(g)(3).[1] (ECF No. 25 at PageID 280.) And she entered a guilty plea to that charge without a written agreement. (*Id.*) The Court sentenced Garner to 48 months' probation with the first six months to be served on home detention. (*Id.*) Garner now seeks habeas relief under 28 U.S.C. § 2255. (ECF No. 1 at PageID 1.) She argues that, based on the decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), her conviction is unconstitutional. (*Id.*) The Court **GRANTS** the Motion for the reasons below.

## LEGAL STANDARD

Under 28 U.S.C. § 2255(a), federal defendants may move for habeas relief. That statute provides:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

And "[a] prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United*

[1] 18 U.S.C. § 922(g)(3) ("It shall be unlawful for any person—who is an unlawful user of or addicted to any controlled substance—to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.").

*States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted). The movant generally has one year from "the date on which the judgment of conviction becomes final" to bring a motion under § 2255. 28 U.S.C. § 2255(f)(1). But a motion to vacate may also be filed within a year of "the date on which the right asserted was initially recognized by the Supreme Court." *Id.* § 2255(f)(3). Because the Court entered judgment in Movant's case on January 14, 2022, and she filed this motion on October 12, 2022—four months after the Supreme Court's decision in *Bruen*—this § 2255 motion is timely.

The Court will now address the § 2255 Motion.

**ANALYSIS**

Garner argues that the conviction under 18 U.S.C. § 922(g)(3) should be vacated because the statute is unconstitutional (ECF No. 1 at PageID 1), given the Supreme Court's decision in *Bruen.* (*Id.* at PageID 2.) And Garner contends that the opinion written by Justice Thomas set forth a new standard that courts must follow: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" (*Id.*)

The Sixth Circuit recently applied *Bruen's* two-step framework in *Williams* and *VanOchten*.[2] In *Williams*, the Court first determined whether the Second Amendment's plain text covers the defendant's conduct. 113 F.4th at 648–49. The Court ruled that the plain text of the Second Amendment does not distinguish among people of different groups when it grants

[2] *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024); *United States v. VanOchten*, 150 F.4th 552 (6th Cir. 2025).

this right. *Id.* at 649. Second, the Court articulated whether the regulation—922(g)(1)—is consistent with the nation's historical tradition of firearm regulation. *Id.* at 650–61. The Court determined that the historical tradition of firearm regulation is justified when the group of people who are prohibited from having this right is "deemed to be dangerous." *Id.* at 657. The *VanOchten* Court affirmed this two-step framework. 150 F.4th 552, 556 (6th Cir. 2025). The Court added clarification on when a person is dangerous.[3] It stated "'dangerous'" refers to "persons who presently pose a clear risk of future harm or violence toward others if they were to possess a gun." *Id.* at 560. And both Courts held that the defendant has the burden of proving she is not dangerous in as-applied challenges. *Williams*, 113 F.4th at 657–58; *VanOchten*, 150 F.4th at 557–59.

The Supreme Court's recent opinion in *United States v. Hemani* endorses the Sixth Circuit's reasoning in *Williams* and *Van Ochten*. *See* 146 S.Ct. 1677 (2026). In *Hemani,* a criminal defendant challenged his indictment under § 922(g)(3) because it violated his Second Amendment right to bear arms. *Id.* 146 S.Ct. at 1685. Hemani admitted to regular marijuana usage and possession of cocaine. *Id.* 146 S.Ct. at 1684–85. The Court explained that the government had failed to identify historical analogues that would justify the categorical criminalization of firearm possession by habitual drug users. *Id.* 146 S.Ct. at 1687. It found that § 922(g)(3)'s categorical prohibition exceeded Congress' ability to regulate firearm possession

[3] *See Williams*, 113 F.4th at 662–63 ("A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary."); *see also VanOchten*, 150 F.4th at 560 ("At the outset, it is worth reflecting on what we mean by 'dangerous.' As *Williams* explained, the relevant principle pulled from founding-era history is that government may limit the right to keep arms of persons who presently pose a clear risk of future harm or violence toward others if they were to possess a gun.").

and violated the Second Amendment. *Id.* 146 S.Ct. at 1694. While declining to articulate a test, the Court noted that some showing that the defendant was dangerous would be necessary to make § 922(g)(3)'s application constitutional to any individual defendant. *Id.* 146 S.Ct. at 1693 ("[W]e do not question that sometimes an individual's unlawful use of marijuana . . . may render him a danger to others. But, again, the government disclaims the need to show anything like that in this case. Instead, it asks us to conclude that anyone who regularly uses marijuana is categorically violent and dangerous without any further showing. . . . affording the government that kind of broad power to designate any group as dangerous and thereby disqualify its members from having a gun would risk allowing it to quickly swallow the Second Amendment.") (internal quotation marks omitted).

This Court finds the Sixth Circuit precedent and *Hemani* support Garner's argument for habeas relief. Garner is a part of the class protected under the Second Amendment. And she does not fit within the group of dangerous people that would justify regulating their Second Amendment rights.

**I. Has Movant Procedurally Defaulted Her Claim?**

The Court must first address the Government's argument that Garner has procedurally defaulted her claim by failing to raise it in her criminal proceeding. (*See* ECF No. 25 at PageID 281.) The Government correctly explains that a movant can make an argument for the first time on collateral review only if they either (1) show cause and prejudice or (2) demonstrate actual innocence. (*Id.* (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Bousley v. United States*, 523 U.S. 614, 622 (1998)).) This is because sentencing challenges under § 2255 are typically waived if not asserted on direct appeal. *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Garner did not argue that her § 922(g)(3) conviction violates the Second Amendment in her criminal case or on direct

appeal. (ECF No. 25 at PageID 281.) She raises the issue for the first time with her Motion. (*See* ECF No. 1.) Garner must therefore demonstrate to the Court that she had sufficient cause for failing to raise this claim before seeking collateral review and that she was prejudiced by the error of which she complains. *Frady*, 456 U.S. at 168. Or Garner must show the Court that she is actually innocent of the underlying § 922(g)(3) conviction. *Bousley*, 523 U.S. at 623.

The Government argues that she cannot make either of these showings for two reasons. First, it notes that to show cause, when arguing that a change in the law has made a movant's conviction unconstitutional, "a new retroactive decision must also have announced a rule that was such a clear break with the past that an attorney representing the defendant would not reasonably have had the tools for presenting the claim." (ECF No. 25 at PageID 282 (citing *Hargrave v. Dugger*, 832 F.2d 1528, 1531 (11th Cir. 1987) (internal quotation marks omitted).) Thus, the Government reasons that Garner cannot show cause because she could have made the same argument that her conviction violates the Second Amendment before the Supreme Court decided *Bruen* and before she moved here. (*Id.*) Second, it asserts that claim of actual innocence requires "a binding decision holding that the specific law in question is unconstitutional." (*Id.* at PageID 283 (citing *United States v. Sheppard*, No. 3:20-CR-201-RJC-DCK-1, 2024 WL 3647906, at *6 (W.D.N.C. Aug. 1, 2024).)

On this point, the Court disagrees with the Government. While noting the Supreme Court's language in *Bousley* that "actual innocence means factual innocence, not mere legal insufficiency," 523 U.S. at 623, the Sixth Circuit has clarified that this means that courts determine whether "the entire record . . . fails to demonstrate" that the Movant violated the relevant criminal statute. *Waucaush v. United States*, 380 F.3d 251, 255 (6th Cir. 2004). It helpfully illustrates that point.

> To illustrate: imagine that [Petitioner] had admitted to stealing apples from the Post Office, was advised by his counsel and the court that apples were vegetables, and pled guilty to 'stealing vegetables from a federal building.' If the Supreme Court later held that, as a matter of law, apples were not vegetables, [Petitioner] would be actually innocent of 'stealing vegetables.'

*Id.* Thus, "[t]o establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Phillips v. United States*, 734 F.3d 573, 582 (6th Cir. 2013) (quoting *Bousley*, 523 U.S. at 623); *see also Hueso v. Barnhart*, 948 F.3d 324, 328 (6th Cir. 2020) ("And a new interpretation that limited a statute's scope could show that a prisoner was innocent of the offense under the statute's narrowed reach.") (citing *Bousley*, 523 U.S. at 623–24).

The Court finds that this reasoning applies to Garner's case. After *Bruen, Hemani*, *Williams,* and *VanOchten*, the relevant inquiry is whether the record reflects that Garner does not pose a danger to the community. This recent law clarifies, as the Court's analysis below will show, that § 922(g)(3) is unconstitutional as applied to habitual drug (marijuana) users unless the defendant can show that they are not dangerous. Because the Court finds that Garner has shown that she is not dangerous, the hypothetical above is apt. Her conduct of smoking marijuana regularly and possessing a firearm while not posing a danger to the community is beyond the scope of conduct that Congress can constitutionally criminalize. Because, as a matter of law, it was unconstitutional to convict Garner under § 922(g)(3), she is actually innocent of her § 922(g)(3) conviction.

The Court can distinguish Garner's case from the decision of another district court that addressed procedural default in a similar context. Recently in *Meacham v. United States*, a court in the Eastern District of Tennessee found that a petitioner convicted under 18 U.S.C. § 922(g)(1) had procedurally defaulted his claim by failing to raise it on direct appeal. No. 2:22-CV-00149-JRG, 2025 WL 778168, at *2–3 (E.D. Tenn. Mar. 11, 2025). That petitioner argued

that *Bruen* made § 922(g)(1), which criminalizes being a felon in possession of a firearm, unconstitutional on its face. *Id.* at *2. The district court noted that "*Bruen* makes no mention of the constitutionality of 18 U.S.C. § 922(g)(1) or any other felon in possession laws. Instead, it merely narrows the test that a Second Amendment regulation must meet to pass constitutional muster . . . ." *Id.* It also highlights that the *Williams* opinion "emphasized that felon in possession laws are presumptively lawful." *Id.* at *3 (internal quotations omitted). The *Meacham* court determined therefore that the petitioner had not overcome his procedural default with his facial challenge.

But the Court is not dealing with a facial challenge here. *VanOchten* explains that there is a class of habitual drug users who are outside the reach of § 922(g)(3)—those who show that they do not pose a danger to the community. 150 F.4th 552, 556 (6th Cir. 2025). Further, *Hemani* clarifies that a factual analysis is required to determine who belongs to that class.

Because procedural default, here, would apply to a person who does *not* belong to the class targeted in § 922(g)(3) and who is actually and factually innocent of the crime, the Court finds that Garner has not procedurally defaulted her claim, and next, analyzes its merits.

**II. Is the Movant's Conduct Protected Under the Plain Text of the Second Amendment**

This Court finds that Garner's conduct is protected under the text of the Second Amendment because she is a part of "the people" and her conduct is possessing a firearm. "[T]he right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "'[T]he people' 'unambiguously refers to all members of the political community, not an unspecified subset,'" and the right therefore "belongs to 'all Americans.'" *United States v. Williams*, 113 F.4th 637, 649 (6th Cir. 2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008)).

To determine whether a defendant is among "the people," she must be a part of the political community to which the Second Amendment right is vested. In *VanOchten*, the defendant was a marijuana user convicted under 18 U.S.C. § 922(g)(3). 150 F.4th 552, 556–57 (6th Cir. 2025). The court held that the defendant is "a member of 'the people' protected by the Second Amendment, despite his marijuana use." *Id.* at 557. It reasoned that the phrase "the people" is drafted with a "high level of generality" and thus fails to distinguish between citizens on its face. *Id.* at 556–57.

And in *Williams*, the defendant was a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). 113 F.4th at 662–63. The court held that the defendant is an "American citizen" and "a member of this political community." *Id.* at 649. The court reasoned that "nothing in the Second Amendment's text draws a distinction among the political community between felons and non-felons—or, for that matter, any distinction at all." *Id.* It follows therefore that Garner, being a marijuana user, is a part of the political community that makes one a member of "the people." As a result, she is protected by the plain text of the Second Amendment. *See United States v. Hemani*, 146 S. Ct. 1677, 1687 (2026) (holding that a habitual marijuana user indicted under § 922(g)(3) falls under the Second Amendment's protection). Next the Court will address the history of firearm regulation.

## III. Is 18 U.S.C. § 922(g)(3) Consistent with This Nation's Historical Tradition of Firearm Regulation and Constitutional as Applied to Movant

This Court finds that 922(g)(3) tracks this nation's historical tradition of firearm regulation. But as explained below Garner does not "pose a credible threat to the physical safety of another" to justify this firearm regulation as applied to her. The Court finds that 18 U.S.C. § 922(g)(3) is therefore unconstitutional as applied to Garner.

To determine whether a firearm regulation is constitutional, the Court's second step is to consider whether regulating firearms under the statute is "consistent with this Nation's historical tradition of firearm regulation." *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022). A statute "that prohibits felons from possessing firearms, is constitutional as applied to 'dangerous individuals.'" *United States v. VanOchten*, 150 F.4th 552, 556 (6th Cir. 2025). "A person convicted of a crime is 'dangerous,' and can thus be disarmed, if he has committed (1) a crime 'against the body of another human being,' including (but not limited to) murder, rape, assault, and robbery, or (2) a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary. *Williams*, 113 F.4th at 663. "[W]hen considering [a defendant's] dangerousness, [a] court may evaluate a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) prosecution." *Id.* at 663. That is because the specific details of a person's past crimes help the Court determine whether she endangers the public today. *Id.* at 659–60.

And "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." *United States v. Rahimi*, 602 U.S. 680, 702, (2024). With that in mind, "based upon historical analogues, Congress 'may use class-based legislation to disarm people it believes are dangerous, so long as members of that class have an opportunity to show they aren't.'" *VanOchten*, 150 F.4th at 556 (citing *United States v. Williams*, 113 F.4th 637, 661–62 (6th Cir. 2024)). "[C]ourts . . . [must] focus on 'each individual's specific characteristics' and make good faith judgments accordingly." *VanOchten*, 150 F.4th at 560 (citing *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024).

To determine whether an individual falls into the class of people that justifies firearm regulation, the Court must look at the crime committed, the danger of the person's conduct, the person's criminal record, and make a good-faith judgment based on each individual's specific characteristics. In *Williams*, the defendant was charged with being a felon in possession of a firearm. 113 F.4th 637, 642 (6th Cir. 2024). His criminal record showed two felony counts of aggravated robbery, a conviction for attempted murder, and a previous conviction for possessing a firearm as a felon. *Id.* at 662. The court held that the defendant's challenge to the constitutionality of the statute as applied to him failed. *Id.* The court reasoned that "[o]ur nation's history shows that the government may require individuals in a disarmed class to prove they aren't dangerous in order to regain their right to possess arms. Thus, . . . the burden rests on Williams to show he's not dangerous. And he can't make that showing." *Id.*

In *VanOchten*, the defendant was charged with possessing unregistered destructive devices–pipe bombs–after sheriff's deputies responded to reports of him shooting a rifle in his backyard near a large propane tank. 150 F.4th 552, 553–54 (6th Cir. 2025). The defendant was intoxicated and under the influence of marijuana at the time of the shooting. *Id.* at 554. The court held that § 922(g)(3) is constitutional as applied to the defendant. *Id.* at 562. The court reasoned that "[t]his case falls on the easy side of the line. In assessing whether VanOchten is dangerous, we need only examine his 'criminal record.'" *Id.* at 560. But also shooting a rifle in the direction of a propane tank in a residential neighborhood is enough on its own to demonstrate that he is a "clear 'threat to the public,'" and thus dangerous. *Id.* at 560–61.

In Garner's case, the Agents arrested her while in possession of a firearm. (*United States v. Dickerson*, No. 2:20-cr-20236-TLP-6 (W.D. Tenn.), ECF No. 214 at PageID 786.) Garner has

no criminal history other than the conviction here and two earlier driving offenses.[4] (*Dickerson*, ECF No. 214 at PageID 788.) Garner was not engaged in any dangerous or harmful activity to another, unlike the defendant in *VanOchten*.[5] VanOchten was shooting a rifle in his backyard near a propane tank, while "drunk and high." *VanOchten*, 150 F.4th at 560. Based on Garner's criminal history, she does not imperil the public, unlike the defendant in *Williams*. 113 F.4th 637, 642, 662 (6th Cir. 2024). Williams's criminal record shows two felony counts of aggravated robbery, a conviction for attempted murder, and a previous conviction for possessing a firearm as a felon. *Id.*

During a hearing on April 7, 2026, Garner relied on the record to show that she does not pose a significant risk of danger to the community.[6] For example, she pointed to the Pretrial Services Report[7] that concluded: "[t]here are no known factors indicating the defendant poses a risk of danger to the community." (*United States v. Jessica Garner*, Case No. 2:20-cr-20236

[4] Her Presentence Investigation Report shows two convictions for driving without a license and failing to restrain a child. (*See United States v. Jessica Garner*, Case No. 2:20-cr-20236, ECF No. 214 at PageID 788.) She was also charged for similar driving offenses three times. The state dropped those charges. While these offenses are not completely without danger, they are hardly the sort of offenses that show someone poses a danger to the public.

[4] *United States v. VanOchten*, 150 F.4th 552, 560–61 (6th Cir. 2025) ("In assessing whether VanOchten is dangerous, we need only examine his 'criminal record.' Remember, he earned a state law conviction for his conduct on the day he was arrested by Michigan deputies. On that day, he 'was shooting' a rifle 'in the direction of a propane tank in a residential neighborhood' while 'drunk and high.' As this event shows, he misused his gun in a way that could 'have caused a major explosion,' injuring himself or harming the person or property of another. His misconduct posed 'a significant threat of danger' to himself and others. From this incident alone, VanOchten has demonstrated—as the district court found—that he presents a clear 'threat to the public.' Because the government can apply § 922(g)(3) to VanOchten consistent with the Second Amendment[.] . . . VanOchten's sentence has no procedural defect." (citing *United States v. Williams*, 113 F.4th 637, 659 (6th Cir. 2024)).

[6] There have been two evidentiary hearings to assess Garner's dangerousness. A hearing on April 1, 2025, and April 7, 2026.

[7] The Pretrial Services Report is prepared by the United States Probation Office early in a criminal case to advise the Magistrate Judge of factors related to the Bail Reform Act.

(W.D. Tenn.), ECF No. 42 at PageID 85.) She also focused on the Presentence Investigation Report. Her counsel argued that the entire report, not just the criminal history portion, shows that Garner is not dangerous. (*United States v. Jessica Garner*, Case No. 2:20-cr-20236, ECF No. 214 at PageID 782–98.) She has no family history of violence and good overall mental and emotional health, as there is no evidence to suggest otherwise. (*Id.*) The Government countered by referring to the testimony of Special Agent Chase Cogswell ("Cogswell") from the hearing on April 1, 2025. (ECF No. 31 at PageID 348–58.)

Cogswell testified that Garner was at the club, Infiniti, with Redrum members on the night a fight broke out between Redrum members and a group of Gangster Disciples. (*Id.* at PageID 351.) He then observed the footage and saw the Redrum members flee the club to their cars. (*Id.*) The Redrum members then opened fire from the dark parking lot as seen by the muzzle flashes in the video. (*Id.*) The Government acknowledged that it had no evidence that Garner was armed or that she fired a weapon that night. (*Id.* at PageID 357–58.)

Cogswell added that Redrum members took part in other shootings. (*Id.* at PageID 350.) He testified that Garner was at the home of 221 North McLean when officers executed a search warrant to arrest Dorjan Churchman and Sheldon Gibbs, both of whom had murder warrants from a shooting in Panola County, Mississippi. (*Id.* at 353–54.) The Government also argued that Garner admitted she fired the weapon about three times on July 4, 2020, and that she allowed acquaintances to hold the firearm in video shoots. (*Dickerson*, ECF No. 214 at PageID 786.) Garner explained that she fired the gun into the ground and that Kenneth Carruthers was the only other person who handled the firearm. (*Id.*)

During the hearing on April 7, 2026, the Government argued that Cogswell's testimony and Garner's testimony showed that Garner's association with members of Redrum, who are

violent or dangerous, makes Garner dangerous by association. Just as "mere association with conspirators is not enough to establish participation in a conspiracy", *see United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007), mere association with Redrum members without Garner herself engaging in violent or dangerous conduct does not make her dangerous here. On balance, the Court finds that Garner's evidence that she does not pose a danger to the community outweighs her association with the dangerous members of Redrum. *Hemani*, 146 S.Ct. at 1693–94 ("The government maintains that it may automatically strip Mr. Hemani of his Second Amendment right to possess a firearm because he uses marijuana a few times a week. . . . [W]e cannot say [the government] has carried its conceded burden of showing its prosecution of Mr. Hemani complies with the Second Amendment.").

It follows that Garner's conduct did not pose a risk of danger to herself or others and, as applied, did not rise to the level of a § 922(g)(3) violation. And Garner's criminal record does not support the finding of dangerousness either. What is more, she completed her 48-month probationary period with no violations. On that basis, this Court finds that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to Garner.[8] Under 28 U.S.C. § 2255, Garner has successfully shown an error of constitutional magnitude,[9] and this Court **GRANTS** her Motion to vacate her sentence.

---

[8] *VanOchten*, 150 4th at 560 ("[C]ourts . . . [must] focus on 'each individual's specific characteristics' and make good faith judgments accordingly." (citing *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024)).

[9] *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) ("[A] prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.").

## CONCLUSION

For the reasons above, the Court **GRANTS** the § 2255 Motion and **VACATES** Movant's conviction and sentence.

**SO ORDERED**, this 20th day of August, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE